[Cite as *Bell's Landscaping & Lawn Servs., L.L.C. v. Owens Corning Sales, L.L.C.*, 2025-Ohio-5602.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

| | |
|---|---|
| Bell's Landscaping & Lawn Services, LLC. | Court of Appeals No.  L-25-00068 |
| Appellant | Trial Court No.  CI 24 4144 |
| v. | |
| Owens Corning Sales, LLC. | **DECISION AND JUDGMENT** |
| Appellant | Decided:  December 16, 2025 |

* * * * *

Francis J. Landry, for appellant.

Matthew T. Kemp and Madison D. Hamm, for appellee.

* * * * *

**MAYLE, J.**

{¶ 1} Appellant, Bell's Landscaping & Lawn Services, LLC ("Bell's Landscaping"), appeals the March 5, 2025 opinion and journal entry of the Lucas County Court of Common Pleas granting appellee, Owens Corning Sales, LLC's ("Owens Corning"), motion to dismiss Bell's Landscaping's complaint under Civ.R. 12(B)(6) for failure to state a claim on which relief can be granted.  For the following reasons, we find that the trial court erred in dismissing the breach-of-contract claim, but did not err in

dismissing the claim for breach of the duty of good faith and fair dealing.[1] We therefore reverse the trial court's judgment, in part, and affirm, in part.

## I. Background and Facts

{¶ 2} On May 19, 2021, the parties to this case entered into a contract for Bell's Landscaping to provide lawn and landscaping services to Owens Corning at its facility in Aiken, South Carolina. The contract went into effect on June 1, 2021, and was to run for a duration of three years, through May 2024. The contract included the following relevant provisions:

> 1. **TERM/TERMINATION.** The term of this Agreement shall begin as of the Effective Date and shall terminate on May 31, 2024 (the "Term"). This Agreement may, however, be terminated at any time by either party upon the following terms and conditions:
>
> A. If a Party commits (i) a material breach of this Agreement and fails to cure such breach within thirty (30) days after receiving notice of the breach from the non-breaching Party; (ii) a material breach of this Agreement which is not capable of being cured within thirty (30) days; or (iii) multiple breaches of this Agreement, whether material or non-material, that collectively constitute a material breach of this Agreement, then the non-breaching Party may, by giving notice to the breaching Party, immediately terminate the Agreement, in whole or in part, without charge, as of a date specified in the notice of termination. The right of termination provided above is not exclusive of any remedies to which a Party may otherwise be entitled at law or in equity in the event of a breach of this Agreement.
>
> * * *
>
> C. Owens Corning may terminate this Agreement at any time and for any reason upon ninety (90) days prior written notice to Vendor….

---

[1] Bell's Landscaping does not challenge the dismissal of its negligence claim on appeal.

2.

\* \* \*

14.  **Insurance.**

\* \* \*

C.      If Owens Corning determines in its sole discretion that Vendor qualifies as a Level 1 contractor, then Vendor acknowledges and agrees that it shall maintain at its sole expense a subscription with a vendor management service provider ("Provider") designated by Owens Corning for the Term provided herein ("Subscription"). Vendor shall furnish to Provider any information Provider requests in connection with the Subscription. Maintaining a Subscription for the Term and furnishing such information to Provider shall be a condition precedent to any and all of Owens Corning's obligations under this Agreement, unless otherwise agreed to in writing by Owens Corning. During the term, Vendor shall hold all insurance coverages and otherwise comply with all insurance requirements identified by Provider in connection with the Subscription. Vendor's certificate of insurance shall be endorsed by Vendor's insurer, and it shall. (1) name Owens Corning as an additional insured on all insurance policies, except for the coverage required for Worker's Compensation and Employer's Liability; (2) expressly waive its insurer's rights of subrogation against Owens Corning; and (3) obligate the insurer to notify Owens Corning in writing at least thirty (30) days prior to any expiration, cancellation, termination and/or material change to each applicable policy. During the Term of this Agreement, Vendor shall at all times hold a valid rating pursuant to Provider's rating system identified within the Subscription.  Should Vendor at any time fail to hold such rating and fail to restore such rating within three (3) days of such failure, then Vendor acknowledges and agrees that it shall be in material breach of this Agreement.  Should Vendor fail to perform any of its obligations identified in this paragraph, then Vendor shall be in material breach of the agreement.

\* \* \*

23.      **ENTIRE AGREEMENT; NON-WAIVER**.  This Agreement sets forth the entire understanding of the Parties hereto and constitutes the entire Agreement between the Parties with respect to the matters contained herein, and supersedes all prior oral or written representations, proposals,

3.

correspondence, discussions, negotiations and agreements. No change, modification, waiver, agreement or understanding, oral or written, in any way purporting to waive or modify the terms hereof shall be binding on either Party hereto unless contained in a written document expressly described as an amendment to, waiver of or extension of this Agreement and unless such document is duly executed by both Parties. A waiver by either Party of any breach or failure to enforce any term or condition of this Agreement shall not in any way affect, limit or waive such Party 's right at any time to enforce strict compliance with that or any other term or condition of this Agreement.

{¶ 3} According to the complaint, Bell's Landscaping "at all times performed services as called for under the contract" until September 2022, when it made a good faith effort to obtain "ISN membership."[2] Bell's Landscaping claimed that "[c]omplexities resulted in delay as Plaintiff was a new potential member" and it did not obtain membership. Bell's Landscaping was then barred from the South Carolina property sometime in October 2022.[3]

{¶ 4} On April 21, 2023, Owens Corning sent a letter to Bell's Landscaping, immediately terminating the contract for its failure to maintain a valid approval rating with ISN. At that time, there was just over a year left on the contract.

---

[2] The contract does not require "ISN membership," and the pleadings do not explain what "ISN" is. The only description provided by Owens Corning is a singular parenthetical insert in its motion to dismiss describing "ISN membership" as a vendor management system.

[3] There are no exact dates in the record pinpointing when Bell's Landscaping allegedly became non-compliant with the contract, or when Bell's Landscaping was no longer permitted on Owens Corning property.

4.

**A. Bell's Landscaping files suit after Owens Corning terminated the contract.**

{¶ 5} Following the termination of the contract, Bell's Landscaping filed suit in the Lucas County Court of Common Pleas. In its complaint, Bell's Landscaping made three allegations against Owens Corning: (1) that Owens Corning breached the contract when it unilaterally terminated the agreement—without cause, without proper notice, and without the opportunity to cure—with over one year remaining on the contract term; (2) that Owens Corning breached the implied covenant of good faith and fair dealing by their actions alleged under the first claim for relief, and in refusing to deal carefully, honestly, and fairly with Bell's Landscaping regarding its ability to complete the contract; and (3) that Owens Corning owed Bell's Landscaping a duty to undertake and perform the contract in a workmanlike manner and that Owens Corning's actions resulted in negligence. Bell's Landscaping requested an amount exceeding the sum of $25,000 for losses under the contract, damages for future business losses and costs, and attorneys fees all together with prejudgment and post judgment interest.

**B. Owens Corning moves to dismiss the complaint**

{¶ 6} Owens Corning moved to dismiss the complaint under Civ. R. 12(B)(6) arguing that dismissal was warranted based on admissions in the complaint regarding the alleged breach of contract—i.e., that Bell's Landscaping was not in compliance with the contract's vendor requirements and that it knew it was not in compliance. Owens

5.

Corning noted that this breach, as explicitly mentioned in the contract, was "material" and therefore, the contract permitted either party to terminate.

{¶ 7} Regarding the contractual requirement of thirty-day notice and opportunity to cure, Owens Corning contended that Bell's Landscaping was "on notice as of September 2022 of its failure to meet the vendor management system requirements" and that despite the allegations from Bell's Landscaping that it was in the process of seeking membership, Bell's Landscaping never cured the deficiencies in the seven or eight months after it was on notice for the deficiencies. Therefore, "the Complaint itself makes clear that Owens Corning provided Bell's with far more time to cure than the contractually required 30-day period."

{¶ 8} In addition, Owens Corning argued that the contract provided in Section 1(A) that if there are grounds for termination, "then the non-breaching Party may, by giving notice to the breaching Party, immediately terminate the Agreement, in whole or in part, without charge, as of a date specified in the notice of termination." According to Owen's Corning, because Bell's Landscaping admitted that Owens Corning provided notice of termination via letter dated April 21, 2023, the complaint failed to allege an actionable breach based on a purported lack of notice.

{¶ 9} Owens Corning briefly addressed the other allegations in the complaint. It argued that the breach of duty of good faith and fair dealing should be dismissed because it was not an independent cause of action. Additionally, Owens Corning argued that the complaint did not allege any actual breach of the implied covenant beyond the

6.

enforcement of the express terms of the contract. Finally, Owens Corning argued that the negligence claim was barred because the parties' relationship was governed by an express contract and that a claimant cannot bring a tort claim grounded in a breach of contract.

### C. Bell's Landscaping claims that questions of fact remain

{¶ 10} Bell's Landscaping opposed the motion focusing mainly on the lack of notice. According to Bell's Landscaping, the contract required a thirty-day period to cure the breach after receiving notice of breach from the nonbreaching party. Bell's Landscaping argued that rather than receiving notice of breach, it was simply barred from the property in October 2022. Moreover, the only notice provided by Owens Corning was the immediate termination on April 21, 2023. Bell's Landscaping added that even if Owens Corning terminated the contract for any reason other than a material breach, it did not give the required 90-day notice as required under the contract. As such, Bell's Landscaping contended that there were issues of fact relating to Owens Corning's compliance with the notice provisions sufficient to warrant the case to go further.

{¶ 11} As a second argument, Bell's Landscaping contended that there were issues regarding the requirement that Bell's Landscaping must have an approval rating with ISN and whether Bell's Landscaping was properly designated, or even was designated, as a Level 1 contractor subject to the vendor requirements of Section 14(C) of the contract.

{¶ 12} Bell's Landscaping additionally challenged the duty and negligence assertions made by Owens Corning.

7.

## D. Owens Corning replies

{¶ 13} Owens Corning replied that "Bell's cannot plausibly complain that [it] breached the 30-day notice provisions" because "Bell's had far more than 30 days to cure its non-compliance, and its failure to do so resulted in termination." It added that Section 1(A) of the contract did not specify any requirement for the particular form of notice to be given to the breaching party.

{¶ 14} Concerning Bell's Landscaping's designation as a Level 1 contractor, Owens Corning first asserted that the complaint did not allege that issue, and then maintained that according to the language of the contract, it had "sole discretion" to determine whether Bell's Landscaping qualified as a Level 1 contractor.

## E. The trial court grants the motion to dismiss

{¶ 15} On March 5, 2025, the trial court granted Owens Corning's motion to dismiss. In doing so, the trial court found that Bell's Landscaping "admits in the averments of the contract that as of September, 2022 it knew it was not in compliance [with Section 14(C) of the agreement]" and therefore Bell's Landscaping knew "it was out of compliance with Section 14(C) of the Agreement…[for] some seven or eight months" when Owens Corning terminated the contract in April 2023. The trial court found this to be a "material breach" and, therefore Owens Corning had "valid grounds for termination of the Agreement."

8.

{¶ 16} The trial court also found that Owens Corning did not have to provide notice of breach and an opportunity to cure because "[p]laintiff's actual knowledge of its own contractual deficiency makes formal notice otiose."

{¶ 17} Regarding the implied duty of good faith and fair dealing, the trial court noted that the Supreme Court of Ohio has "rejected the contention that a party breaches the implied duty of good faith and fair dealing merely by seeking to enforce the contract or by acting as permitted by its express terms." *Lucarell v. Nationwide Mut. Ins. Co.*, 2018-Ohio-15, ¶ 43. Further, "there is no independent cause of action for breach of the implied duty of good faith and fair dealing apart from a breach of the underlying contract." *Id*. at 44. Because the trial court found that Owens Corning did not breach the underlying contract, it dismissed the breach of duty allegation.

{¶ 18} Finally, the trial court dismissed the negligence allegation finding that "Ohio law is clear that a claimant may not bring a tort claim grounded in alleged duties that arise from a contract. See *Textron Fin. Corp. v. Nationwide Mut. Ins. Co*., 115 Ohio App.3d 137, 151 (9th Dist. 1996)."

{¶ 19} Bell's Landscaping appealed. It assigns the following error for our review:

> The trial court erred in granting Appellee's motion to dismiss by determining that Appellant's claim for breach of contract and the related claim for breach of covenant of good faith and fair dealing were not actionable without affording Appellant's (sic) an opportunity to develop evidence in discovery pertaining to the requirements of contractual provisions. (March 5 20[2]5, Final Appeal Order/Opinion and Judgment Entry, generally)

9.

## II. Law and Analysis

### A. Civ.R. 12(B)(6) Standard

{¶ 20} "Before responding to a complaint by answering, Civ.R. 12(B)(6) allows a party to file a motion to dismiss asserting that the complaint fails to state a claim upon which relief may be granted." *Lyon Revocable Tr. v. Berry*, 2025-Ohio-425, ¶ 14 (3d Dist.), quoting *Pond v. E & E Towing & Recovery, LLC*, 2024-Ohio-800, ¶ 16 (10th Dist.). "A Civ.R. 12(B)(6) motion to dismiss is procedural and tests the sufficiency of the complaint." *NZR Retail of Toledo, Inc. v. Beck Suppliers, Inc.*, 2016-Ohio-3205, ¶ 12 (6th Dist.), citing *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992).

{¶ 21} We review de novo a trial court's decision granting a motion to dismiss under Civ.R. 12(B)(6) for failure to state a claim upon which relief may be granted. *Perrysburg Twp. v. Rossford*, 2004-Ohio-4362, ¶ 5. "Therefore, in reviewing a trial court's decision regarding a Civ.R. 12(B)(6) motion to dismiss, 'we afford no deference to the trial court's decision and apply our own, independent review to determine if the requirements of Civ.R. 12(B)(6) were satisfied.'" *Colley v. Crabtree*, 2024-Ohio-437, ¶ 62 (4th Dist.), quoting *Estep v. State*, 2009-Ohio-4349, ¶ 5 (4th Dist.).

{¶ 22} "Ohio is a notice-pleading state." *Maternal Grandmother v. Hamilton Cty. Dept. of Job and Family Servs.*, 2021-Ohio-4096, ¶ 10, citing *Wells Fargo Bank N.A. v. Horn*, 2015-Ohio-1484, ¶ 13. This means that a plaintiff is not expected to plead a claim with particularity outside of a few specific circumstances. *Id.* Instead, a "short and plain

10.

statement of the claim" is usually sufficient. *Id.* citing Civ.R. 8(A). To dismiss a complaint under Civ.R. 12(B)(6), "it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to the relief sought." *Ohio Bur. of Workers' Comp. v. McKinley*, 2011-Ohio-4432, ¶ 12, citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245 (1975). In considering the motion, the court must accept as true all factual allegations in the complaint and construe any reasonable inferences in favor of the non-moving party. *Alford v. Collins-McGregor Operating Co.*, 2018-Ohio-8, ¶ 10, citing *Ohio Bur. Of Workers' Comp* at ¶ 12. "[I]n general a Civ.R. 12(B)(6) motion is viewed with disfavor, rarely granted and reserved for those cases that cannot possibly succeed." *Alexander Local School Dist. Bd. of Education v. Village of Albany*, 2017-Ohio-8704, ¶ 51 (4th Dist.).

### B. The contract alleges a short and plain statement that Bell's Landscaping did not materially breach the contract but, if it did, Owens Corning did not provide proper notice or opportunity to cure.

{¶ 23} In its sole assignment of error, Bell's Landscaping argues that the trial court erred when it dismissed its breach-of-contract claim. Bell's Landscaping reiterates the arguments made before the trial court—i.e., that it has properly alleged that 1) it was not given any notice of breach nor any required opportunity to cure, 2) Owens Corning failed to give the required notice to terminate the contract, and 3) there is a question of whether the contract even required Bell's Landscaping to obtain ISN membership and an approval rating. We will address these arguments out of order.

11.

**{¶ 24}** First, regarding the alleged requirement of maintaining ISN membership and an approval rating, the contract attached to the complaint provides that "[i]f Owens Corning determines in its sole discretion that Vendor qualifies as a Level 1 contractor, then Vendor acknowledges and agrees that it shall maintain at its sole expense a subscription with a vendor management service provider ('Provider') designated by Owens Corning for the Term provided herein ('Subscription')." The contract further states that "[d]uring the Term of this Agreement, Vendor shall at all times hold a valid rating pursuant to Provider's rating system identified within the Subscription," and that Vendor's failure to hold such rating or failure to restore such rating "within three (3) days of such failure" would constitute a material breach of the contract.

**{¶ 25}** In the complaint, Bell's Landscaping alleges that it was "in the process of seeking" ISN membership in September 2022, but it was "delay[ed]" in that process due to unspecified "[c]omplexities." It claims that Owens Corning did not provide an "opportunity to cure its lack of membership" before it was "barred from Defendant's property in October of 2022," and that Owens Corning terminated the contract on April 21, 2023 "for failure to have an approval rating with ISN." Reading the complaint and the attached contract as a whole, it is reasonable to infer that an "ISN membership," although not specifically referenced in the contract, is the "subscription with a vendor management service provider" that was required for "Level 1 contractors."

**{¶ 26}** The complaint also alleges, however, that Bell's Landscaping was required to "cure its lack of membership" *only if* "in fact it was a valid requirement under the

12.

contract given Plaintiff's small size." Again, reading the complaint and the contract together, it is reasonable to infer that Bell's Landscaping is alleging that it was not required to obtain "ISN membership" at all because it is too small to qualify as a "Level 1 contractor."[4] If this is true, Owens Corning may have terminated the contract "without cause," as alleged at paragraph ten of the complaint.

{¶ 27} In response to this argument on appeal, Owens Corning merely argues that "the language of the Agreement is clear that Bell's designation as a Level 1 contractor is within Owens Corning's 'sole discretion.'" That may be true, but "Bell's designation as a Level 1 contractor" is not alleged in the complaint and, therefore, is not an assumed fact for purposes of the Rule 12(B)(6) motion. While Bell's Landscaping conceded that there was a breach *if* the requirement to obtain ISN membership "was a valid requirement under the contract given Plaintiff's small size," at no point did Bell's Landscaping identify itself as a Level 1 contractor. The complaint does not specify if, how, when, or why Owens Corning designated Bell's Landscaping as a Level 1 contractor. The trial court apparently presumed that Bell's Landscaping was a Level 1 contractor subject to the requirements of Section 14(C), but there are no facts in the complaint to support this presumption—and, therefore, no facts upon which to presume, at this stage of the proceeding, that Bell's Landscaping was in breach of the contractual requirements for a Level 1 contractor. For these reasons, Bell's Landscaping has sufficiently alleged that the

---

[4] The contract does not define "Level 1 contractor."

13.

contract did not require it to obtain ISN membership or approval rating and, therefore, it did not materially breach the agreement.

{¶ 28} In the absence of a material breach, the contract allows Owens Corning to terminate the contract upon "ninety (90) days prior written notice to Vendor"— which, according to the complaint, was not given. Thus, Bell's Landscaping has alleged a short and plain statement that it was not in material breach of the agreement when Owens Corning unilaterally terminated the contract on April 21, 2023, and Owens Corning therefore breached the contract by terminating without the proper 90-day notice.

{¶ 29} Bell's Landscaping also alleges, in the alternative, that if it breached the contract by failing to obtain ISN membership and approval rating, Owens Corning subsequently breached the contract by failing to either provide an opportunity to cure that breach or provide the required notice to terminate the contract.

{¶ 30} Under Section 14(C), a "material breach" occurs if a Vendor qualifies as a Level 1 contractor and "at any time" fails to hold a rating with the designated vendor management service provider and "fail[s] to restore such rating within three (3) days of such failure." Here, according to the complaint, Bell's Landscaping failed to hold ISN membership and an ISN approval rating from September 2022 until April 21, 2023— which is more than three days, and would be a "material breach" under the agreement. Bell's Landscaping contends that per Section 1(A)(i) of the contract, it should have had 30 days from receiving notice of the breach "from the non-breaching party" (Owens Corning) to cure said breach. That Section provides:

14.

A.      If a Party commits (i) a material breach of this Agreement and fails to cure such breach within thirty (30) days after receiving notice of the breach from the non-breaching Party; (ii) a material breach of this Agreement which is not capable of being cured within thirty (30) days; or (iii) multiple breaches of this Agreement, whether material or non-material, that collectively constitute a material breach of this Agreement, then the non-breaching Party may, by giving notice to the breaching Party, immediately terminate the Agreement, in whole or in part, without charge, as of a date specified in the notice of termination….

* * *

C.      Owens Corning may terminate this Agreement at any time and for any reason upon ninety (90) days prior written notice to Vendor….

{¶ 31} First, regarding opportunity to cure, the complaint alleges that instead of providing Bell's Landscaping with a notice of the breach, Bell's Landscaping was "barred from Defendant's property in October 2022 without being given any opportunity to cure its lack of membership and any other claimed deficiencies…." It is reasonable to infer from this allegation that Owens Corning somehow prevented or frustrated Bell's Landscaping's ability to cure its "lack of membership and any other deficiencies" when it banned Bell's Landscaping from the premises in October 2022. Without knowing anything at all about the "ISN" system itself or the alleged "other deficiencies"—which may involve the actual provision of services on Owens Corning's property—we must accept as true all factual allegations in the complaint and construe any reasonable inferences in favor of the non-moving party. *Alford*, 2018-Ohio-8, at ¶ 10. For this reason, we find that Bell's Landscaping has sufficiently alleged that Owens Corning did not properly provide an opportunity to cure.

15.

{¶ 32} Second, regarding notice, Bell's Landscaping alleges that Owens Corning provided no notice before its unilateral termination on April 21, 2023. In response, Owens Corning relies on an "actual notice" theory to support its position that because Bell's Landscaping knew it was in breach of the contract, Owens Corning was not required to give Bell's Landscaping notice of the breach or more than immediate notice of termination. This was the position taken by the trial court—Bell's Landscaping's "actual knowledge of its own contractual deficiency makes formal notice otiose." Owens Corning additionally argues that "the Agreement does not require notice of breach to be provided in any particular form…" and implies that this permits actual notice to satisfy the terms of contract.

{¶ 33} While Owens Corning is correct that the contract does not require notice to "be provided in any particular form," it does require notice come "from the nonbreaching party"—i.e., Owens Corning. The contract provides that Owens Corning was either required to provide Bell's Landscaping 30 days' notice to cure for a material breach or 90 days' notice to terminate for any other reason. The complaint alleges that Owens Corning breached the contract because it did not provide *any* notice before terminating the contract on April 21, 2023. The complaint therefore states a claim upon which relief may be granted. Whether "actual notice" meets the contract's notice requirements is a factual issue that cannot be resolved on the motion to dismiss. *See Gollihue v. Natl. City Bank*, 2011-Ohio-5405, ¶ 22-23 (10th Dist.) (highlighting that while failure to provide "actual notice" may not necessarily preclude recovery, "actual notice" cases decided on summary

judgment leave genuine issues of material fact regarding issues such as substantial compliance and harmlessness.)

{¶ 34} Accordingly, for all these reasons, the trial court erred in dismissing Bell's Landscaping's breach of contract claim.

{¶ 35} Finally, we address Bell's Landscaping's claim that Owens Corning breached its duty of good faith and fair dealing. In its Judgment Entry dismissing the complaint, the trial court cited to *Lucarell v. Nationwide Mut. Ins. Co.*, 2018-Ohio-15, ¶ 44, which holds that "there is no independent cause of action for breach of the implied duty of good faith and fair dealing apart from a breach of the underlying contract." Because the trial court had dismissed Bell's Landscaping's breach of contract claim, the court dismissed the duty of good faith and fair dealing claim pursuant to *Lucarell* without conducting any independent analysis.

{¶ 36} "[U]nder Ohio law, 'there is an implied duty of good faith and fair dealing in every contract.'" *CosmetiCredit, LLC v. World Fin. Network Natl. Bank,* 2014-Ohio-5301, ¶ 35, (10th Dist.), quoting *Am. Contr.'s Indemn. Co. v. Nicole Gas Prod., Ltd.,* 2008-Ohio-5056, ¶ 13 (10th Dist.). Good faith is "a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St. 3d 433, 443-444 (1996).

17.

**{¶ 37}** The trial court is correct that the breach of duty of good faith and fair dealing is not an independent cause of action. *Lucarell* at ¶ 44. While it is not an *independent* cause of action, the claim is "subsumed" within the breach of contract claim. *See Krukrubo v. Fifth Third Bank*, 2007-Ohio-7007, ¶ 19 (10th Dist.) ("[A] claim for breach of contract subsumes the accompanying claim for breach of the duty of good faith and fair dealing."). This duty is integral to the contract, and therefore, "the breach of that duty, when alleged, is thus integral to the plaintiff's cause of action for breach of contract." *Id*.

**{¶ 38}** Accordingly, the trial court correctly dismissed count two of the complaint because it does not allege an independent cause of action. Bell's Landscaping's claim for breach of the duty of good faith and fair dealing is subsumed within count one, breach of contract.

**{¶ 39}** Bell's Landscaping's sole assignment of error is therefore well-taken, in part, and not well-taken, in part.

### IV. Conclusion

**{¶ 40}** In sum, we find that the complaint states a claim upon which relief can be granted. The trial court erred in dismissing count one of Bell's Landscaping's complaint, breach of contract, under Civ.R. 12(B)(6). The trial court did not err by dismissing count two of the complaint.

**{¶ 41}** As such, we reverse the trial court's dismissal of count one (breach of contract). We affirm the trial court's dismissal of count two (breach of the duty of good

faith and fair dealing). The dismissal of count three (negligence) was not an issue on appeal and, we accordingly, affirm count three as well. The March 5, 2025 decision of the Lucas County Court of Common Pleas granting Owens Corning's motion to dismiss is therefore reversed, in part, and affirmed, in part. We remand this matter to the trial court for further proceedings.

{¶ 42} Owens Corning is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed, in part, and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.

_____
JUDGE

Gene A. Zmuda, J.

_____
JUDGE

Myron C. Duhart, J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.